FILED

98 JUL -8 AM 10: 00

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

JUL 8 1998

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MIKE FRANKLIN,  }
　}
　　Plaintiff,  }
　}
　vs.  }  CIVIL ACTION NO.
　}
　}  CV-98-AR-0028-S
KOPPERS INDUSTRIES, INC., AND  }
BEAZER EAST, INC.,  }
　}
　　Defendants.

**MEMORANDUM OPINION**

Plaintiff, Mike Franklin ("Franklin"), alleges that defendants, Koppers Industries, Inc. ("KII") and Beazer East, Inc. ("Beazer"), are liable for violations of the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.* ("RCRA"), the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* (the "Clean Water Act" or "CWA"), the Clean Air Act, 42 U.S.C. §§ 7601 *et seq.* ("CAA"), and companion Alabama regulations. Initially, defendants filed a motion to dismiss Franklin's complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P. Following oral argument on defendants' said motion, the court took defendants' motion to dismiss under advisement. On May 8, 1998, this court converted defendant's motion to dismiss into a motion for summary judgment in order to give closer consideration to factual developments and authority subsequently submitted by the parties. In so doing, the court gave the parties additional

13

time within which to brief the relevant issues. For the following reasons, the court now concludes that Beazer and KII are due to receive summary judgment.

## I. *Pertinent Undisputed Facts*

On or about March 30, 1990, the Alabama Department of Environmental Management ("ADEM") issued Administrative Order No. 90-095-HW ("Order No. 90-095-HW"). This administrative order required Beazer and KII to complete a groundwater quality assessment of three hazardous waste management units located at their coke facility in Dolomite, Alabama (the "Dolomite facility" or "facility"). Pursuant to Order No. 90-095-HW, Beazer and KII were to undertake the groundwater quality assessment "as soon as technically feasible." It also required defedants to complete the groundwater quality assessment within six months of starting it.

On or about July 7, 1991, the United States Environmental Protection Agency ("USEPA") issued an Administrative Order of Consent ("AOC") to Beazer and KII. USEPA issued the AOC pursuant to RCRA. The federal AOC required defendants to perform a RCRA Facility Investigation ("RFI"). Among other things, the RFI required defendants to perform a groundwater quality assessment "to characterize any plumes of contamination at the [Dolomite]

2

facility." In effect, the federal AOC mandated a groundwater quality assessment for the *entire* Dolomite facility, not just the three hazardous waste managements units contemplated by ADEM Order No. 90-095-HW.

Given the broader and overlapping nature of the federal AOC, Beazer and KII approached ADEM about coordinating the requirements of Order No. 90-095-HW with those imposed by the AOC. As a result of those overtures, defendants and ADEM entered into a settlement agreement in or around late March 1993 (the "Settlement Agreement"). In essence, the Settlement Agreement provided that the requirements of Order No. 90-095-HW would be met by the results of the RFI and that the RFI would dictate the timetable for completing any groundwater quality assessment. However, ADEM reserved the right under the Settlement Agreement to require additional compliance measures if the results of the RFI did not fully satisfy certain state regulations. Significantly, with the Settlement Agreement, ADEM released defendants from any and all obligations imposed under Order No. 90-095-HW.

On or about December 30, 1997, Franklin served his notice of intent to sue on defendants. On January 6, 1998, he filed his complaint. In part, Franklin alleged that he was less inclined to boat, wade, or fish near the confluence of Valley Creek and

3

Opossum Creek because of polluted water and air emanating from the Dolomite facility.

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P. In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). Defendants have invoked Rule 56.

## III. *Discussion*

### A. *Franklin's RCRA Claims*

Franklin alleges that defendants are in violation of the mandates imposed by paragraphs B, C, and D of ADEM Administrative Order No. 90-095-HW. He seeks an injunction requiring defendant to comply immediately with that order and prohibiting further violations thereof. In response, defendants argue, *inter alia*, that Franklin's allegations concerning Order 90-095-HW are moot.

4

More specifically, defendants contend that, in light of the Settlement Agreement they entered into with ADEM in March 1993, any alleged violations of Order No. 90-095-HW and/or RCRA are wholly past and, therefore, cannot form the basis of a RCRA citizen suit. This argument is well taken.

As the Eleventh Circuit has observed:

> Longstanding principles of mootness . . . prevent the maintenance of suit when there is no reasonable expectation that the wrong will be repeated. In seeking to have a case dismissed as moot, the defendant's burden is a heavy one. The defendant must demonstrate that it is **absolutely clear** that the allegedly wrongful behavior cannot reasonably be expected to recur. Mootness doctrine thus protects defendants from the maintenance of suit under [federal environmental statutes] based solely on violations wholly unconnected to any present or future wrongdoing. . . .

*Atlantic States Legal Found. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1133-34 (11th Cir. 1990) (quoting *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 66, 108 S.Ct. 376, 386 (1987) (citations and internal quotation marks omitted) (emphasis in original).

With the foregoing standard in mind, it is clear from the record that Franklin's request for injunctive relief concerning Order No. 90-095-HW is moot. The record reveals that, in March 1993, defendants and ADEM entered into a Settlement Agreement. Pursuant to that Settlement Agreement, ADEM waived "all requirements placed upon Beazer and KII by Administrative Order

No. 90-095-HW."[1]  *Exh. 4 to Defs.' Mot. to Dismiss* at ¶ 11.  In other words, with the Settlement Agreement, ADEM released defendants completely from any and all duties imposed by Order No. 90-095-HW.  Consequently, defendants have had no obligation to comply with Order No. 90-095-HW since March 1993.  Given this evidence, it is "absolutely clear" to this court that the wrongful behavior alleged by Franklin — namely, violations of Order No. 90-095-HW — ended several years ago and cannot reasonably be expected to recur.  Therefore, as per *Gwaltney* and *Tyson Foods*, the court concludes that Franklin's prayer for injunctive relief regarding ADEM Order No. 90-095-HW is due to be dismissed as moot.  *Cf. Atlantic States Legal Found. v. Eastman Kodak Co.*, 933 F.2d 124, 127 (2d Cir. 1991) (explaining that citizen suit must be dismissed where settlement between defendant and state environmental agency has caused alleged violations to cease without prospect of recurrence).

    This conclusion remains unchanged despite Franklin's contention that, because ADEM failed to provide for public notice

---

[1] In addition, the Settlement Agreement provided:

ADEM agrees that any and all claims, rights, demands, and causes of action against Beazer and/or KII relating to Administrative Order No. 90-095-HW are satisfied, discharged and settled and hereby releases and forever discharges Beazer and KII . . . for any and all liability for all claims it now has, or may have arising out of Administrative Order No. 90-095-HW.

*Exh. 4 to Defs.' Mot to Dismiss* at ¶ 14.

and comment before entering into the Settlement Agreement with Beazer and KII, that agreement does not bar his citizen suit. Beyond advancing this contention, Franklin makes no effort to identify any Alabama statute or regulation that required ADEM to initiate formal public participation procedures before entering into the Settlement Agreement. As such, he has failed to demonstrate that ADEM did not have the authority both to resolve any past violations of Order No. 90-095-HW and to release defendants from their future obligations thereunder by such informal means. Obviously, Franklin's conclusory assertions to the contrary are insufficient to withstand summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); *Pitts v. Shell Oil Co.*, 463 F.2d 331, 335 (5th Cir. 1972).[2]

### B. Franklin's Clean Air Act Claims

Franklin also alleges that the Dolomite facility emits air pollutants in excess of the standards imposed by its air pollution permits and federal regulations. To remedy this situation, he seeks an injunction requiring immediate compliance with the relevant air pollution standards and prohibiting future violations thereof. As with Franklin's RCRA claims, Beazer and KII respond by arguing that his request for such injunctive

---

[2] The Eleventh Circuit has adopted as binding precedent all decisions of the Fifth Circuit handed down before October 1, 1981. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

relief is due to be dismissed as moot. Again, defendants' argument is well taken.

It is undisputed that defendants ceased all operations at the Dolomite facility on January 9, 1998. *Aff. of Randall Collins* at ¶ 2. Thus, while defendants may have been in violation of certain air pollution standards when Franklin filed his complaint on January 6, 1998, those alleged violations necessarily ended three days later with the closure of the facility. Furthermore, the undisputed evidence reveals that future violations of the CAA by defendants are highly unlikely, if not impossible, due to defendants' decision to permanently dismantle the Dolomite facility. *Id.* In short, the record demonstrates that, after Franklin filed his complaint, defendants halted all violations of air pollution standards at issue and that there is no reasonable likelihood of any similar misconduct in the future. Notwithstanding Franklin's protestations to the contrary, it is well settled that, under such circumstances, the "traditional principles of mootness will prevent the maintenance of [a citizen] suit for injunctive relief." *Tyson Foods*, 897 F.2d at 1135; *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 900 F. Supp. 67, 70 (E.D.Tex. 1995). Accordingly, in light of defendants' *post facto* compliance, Franklin's claim for injunctive relief regarding violations of state and federal air

pollution standards is due to be dismissed as a matter of law.

### C. *Franklin's Remaining Claims for Relief*

Franklin's remaining claims for relief include: (1) an assessment of $25,000 in civil penalties against each defendant for each day of continuing violations; (2) an award of costs and reasonable attorneys' fees; and (3) "for such other, further relief as this Court deems appropriate." Compl. ¶¶ 51-54. Presumably, Franklin seeks these various forms of relief to redress his injuries occasioned by defendants' alleged violations of the CWA, the CAA, and RCRA. In response, Beazer and KII argue that, in light of recent controlling authority, Franklin does not have standing to maintain such claims for relief. The court agrees.

In *Steel Co. v. Citizens For A Better Environment*, ___ U.S. ___, 108 S.Ct. 1003 (1998), the Supreme Court of the United States held that, where, as here, a plaintiff seeks civil penalties that are payable only to the United States Treasury, his costs, and attorneys' fees as compensation for injuries caused by a defendant's alleged wrongdoing, those items do not satisfy the redressability prong of Article III's requirements for standing. *Id.* at 1018-19. This holding applies with equal force to general prayers for relief, such as Franklin's request "for such other, further relief as this Court might deem

9

appropriate," where the court is unable to discern precisely what sort of relief, if any, might serve to redress the alleged harm.[3] *Id.* In view of this authority, it is clear that none of the remaining claims for relief sought by Franklin is likely to remedy any injuries he personally suffered, or may suffer, as a result of violations of the statutes and regulations at issue. Accordingly, the court concludes that Franklin does not have standing to maintain this action and that his remaining claims for relief are due to be dismissed as a matter of law.

## VI. *Conclusion*

The court will enter a separate and appropriate order consistent with the conclusions reached hereinabove.

DONE this 8th day of July, 1998.

```
                              _____
                              WILLIAM M. ACKER, JR.
                              UNITED STATES DISTRICT JUDGE
```

---

[3] In his response to defendants' converted motion for summary judgment, Franklin indicates his intention to amend his complaint specifically to request injunctive relief for defendants' alleged violations of the CWA. *Pl.'s Resp. To Defs.' Converted Mot. For Summ. J.* at 3 n.2. Franklin has yet to file any such amendment. Nevertheless, given his avowed intention to do so, the court assumes for purposes of this opinion that Franklin's general prayer for relief does not seek injunctive relief to correct any alleged CWA or NPDES permit violations.